# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FORT GIBSON STATE BANK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| TRAVELERS CASUALTY AND ) | Case No. CIV-19-00144-PRW |
| SURETY COMPANY OF AMERICA and ) | |
| SUSAN CHAPMAN, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Plaintiff's "Motion to Remand and Brief in Support" (Dkt. 15) (the "Motion"). In its Motion, Plaintiff asks the Court to remand this case to the District Court for Muskogee County. Plaintiff also requests an award of its costs and expenses incurred in the removal and remand of this action. Defendant Travelers filed a response (Dkt. 19) on June 3, 2019, and Plaintiff filed a reply (Dkt. 20) on June 14, 2019. For the reasons set forth below, the Motion is **GRANTED** with respect to the request for remand but is **DENIED** with respect to the request for fees and costs.

### *Background*

Plaintiff, Fort Gibson State Bank, (the "Bank") is a state-chartered bank serving customers in Fort Gibson, Oklahoma. Defendant Susan Chapman worked for the Bank, first as a loan officer, then as an assistant vice president, and finally as a vice president, from 1999 to 2018.

1

According to the Bank, Chapman stole millions of dollars from it and its customers during her tenure, which she was able to conceal by falsifying records and shifting funds from one customer account to another. In fact, she was so successful in her concealment that the Bank only discovered the theft when she was away on vacation in June of 2018—fifteen years into the scheme. When the Bank did finally discover the scheme, it immediately fired Chapman.

It also contacted Travelers Casualty and Surety Company of America ("Travelers"), with whom it held a Financial Institution Bond (the "Bond") covering up to $2,500,000 in losses resulting from dishonest or fraudulent acts committed by bank employees. In that initial contact, the Bank informed Travelers of Chapman's theft and initiated the claim-submission process. It then began a forensic audit to investigate the scope and structure of the scheme. In total, it would identify a net loss in excess of $2,800,000.

The Bank furnished Travelers with thousands of documents substantiating its claim. Nevertheless, Travelers hired a forensic accountant of its own to investigate. Traveler's accountant visited the bank three times, collected additional documentation, and interviewed five current and former bank employees over the course of about five months.

At the same time, the Bank was under mounting pressure from regulators. Chapman's theft seriously depleted its required capital, and by March 2019, the Federal Deposit Insurance Corporation (the "FDIC") and the Oklahoma Bank Commission had required the Bank to shore up its now-deficient capital to the tune of $1,200,000. Faced with this capital call, the Bank pressed Travelers to make a coverage determination and

pay on the claim so it could meet its capital requirements, but Travelers declined to say whether it would accept the claim.

So, on April 15, 2019, the Bank sued Travelers for breach of contract and bad faith and Chapman for fraud and breach of fiduciary duty in a single action brought in the District Court for Muskogee County. Travelers promptly removed to this Court pursuant to 28 U.S.C. § 1352 (conferring jurisdiction over actions on bonds executed under federal law) and 28 U.S.C. § 1332(a)(1) (conferring jurisdiction over actions between diverse parties for amounts in excess of a certain threshold).

Now, the Bank asks the Court to remand this action to the District Court for Muskogee County, arguing that the Court does not have subject matter jurisdiction under either 28 U.S.C. § 1352 or 28 U.S.C. § 1332(a)(1). The Bank also asks for an award of its costs and fees incurred in bringing the Motion to Remand because, in its view, the removal "was not objectively reasonable."

### *Legal Standard*

A federal district court must remand any removed case over which it lacks subject matter jurisdiction.[1] The burden rests on the removing party invoking the court's

---

[1] 28 U.S.C. § 1447(c).

jurisdiction to demonstrate that the action was properly removed.[2] Because federal courts are "limited tribunals," there is a presumption against jurisdiction over removed cases.[3]

## *Discussion*

*The Court Does Not Have Jurisdiction Pursuant to 28 U.S.C. § 1352.*

The Court first addresses whether it has subject matter jurisdiction under 28 U.S.C. § 1352. Because that question turns on the interaction of several statutes and other materials, the Court discusses the relevant law and arguments in step-by-step fashion.

Under 28 U.S.C. § 1352, the district courts "have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States."[4] Travelers argues that the Bond was "executed under" 12 U.S.C. § 1828(e), thereby supplying the predicate federal law necessary for jurisdiction.

In 12 U.S.C. § 1828(e), Congress conferred upon the FDIC authority to "require any insured depository institution to provide protection and indemnity against burglary, defalcation, and other similar insurable losses." Travelers argues that the FDIC invoked this authority to mandate the Bond in two places: the FDIC's Statement of Policy on Applications for Deposit Insurance (the "Policy Statement") and the Risk Management

---

[2] *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) (citing *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)); *Town of Freedom v. Muskogee Bridge Co.*, 466 F. Supp. 75, 77 (W.D. Okla. 1978).

[3] *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 814 (10th Cir. 2020) (quoting *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094–95 (10th Cir. 2005)).

[4] In full, 28 U.S.C. § 1352 provides that "[t]he district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."

Manual. Because Travelers and the Bank entered into the Bond in accordance with the Policy Statement and Risk Management Manual, Travelers continues, the Bond was "executed under [a] law of the United States" and therefore the Court has subject matter jurisdiction.

The Bank disagrees. It argues that the FDIC's Policy Statement and Risk Management Manual neither require a bond nor have the force of law, both of which, it contends, are essential for jurisdiction under 28 U.S.C. § 1352. The Court finds that the Bank has the better argument, in line with Tenth Circuit precedent and the opinions of the lower courts to have considered these very arguments.

The Tenth Circuit has held that the federal district courts have jurisdiction under 28 U.S.C. § 1352 over actions in which "a bond has been required by regulations having the force of law."[5] The Policy Statement and Risk Management Manual fall short of this line for two reasons.

First, neither the FDIC's Policy Statement nor its Risk Management Manual have the force of law.[6] Second, neither the Policy Statement nor the Risk Management Manual

---

[5] *U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1495 (10th Cir. 1995). *Contra Del Hur, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 94 F.3d 548, 551 (9th Cir. 1996) ("Section 1352 extends federal jurisdiction over 'any action on a bond *executed under any law* of the United States.' National Union urges us to construe the phrase 'executed under' to mean 'required by.' The plain language of the statute simply does not support such a construction." (cleaned up)).

[6] *See Christensen v. Harris Cty.*, 529 U.S. 576, 586 (2000) ("[P]olicy statements, agency manuals, and enforcement guidelines . . . lack the force of law . . . ."); *Monticello Banking Co. v. Everest Nat'l Ins. Co.*, 2013 WL 5411102, at *8 (E.D. Ky. Sept. 26, 2013) ("[B]ecause the FDIC manual is not a law of the United States for the purposes of § 1352, a controversy arising from its bond requirement does not confer federal question jurisdiction."); *Fifth Third Bank v. Progressive Cas. Ins. Co.*, 2011 WL 5037178

require the Bank to obtain a bond by their plain terms. The FDIC's Policy Statement provides only that "[a]n insured depository institution *should* maintain sufficient fidelity bond coverage,"[7] not that such institutions "*shall*" maintain such coverage.[8] Put differently, there are best practices and then there are requirements, and this is the former. As for the FDIC's Risk Management Manual, while it does state that "[i]f the bank is without coverage, a thorough investigation should be made to determine the reasons insurance protection is lacking" and that "[s]uch banks must continue diligent, good faith efforts to obtain reasonably priced coverage,"[9] it also goes on to state that such insurance protection is not mandatory: "In some cases, a bank may offer alternate arrangements in lieu of the usual insurance bond."[10] In sum, though the FDIC's Policy Statement and Risk Management Manual clearly encourage banks to obtain an insurance bond, like the Financial Institution Bond in this case, neither requires it. And because neither the Policy

---

(W.D.N.C. May 12, 2011) (same); *Veritex Community Bank, NA F/K/A Fidelity Bank v. Vishay Precision Group, Inc.*, 2012 WL 13034125 (N.D. Tex. Jun. 6, 2012) (same).

[7] Applications for Deposit Insurance, 63 Fed. Reg. 44752, 44759 (Aug. 20, 1998) (emphasis added).

[8] Travelers also cites Section 12.1 of the FDIC's Risk Management Manual. Section 12.1, however, is also couched in terms of what banks "should" do, not what they "shall" do. *See* FDIC Risk Management Manual of Examination Policies §12.1-7, *available at* https://www.fdic.gov/regulations/safety/manual/section12-1.pdf ("With respect to fidelity coverage, the FDIC's position is that applicants should subscribe to and maintain adequate coverage and have in force at all times a $1 million excess bank employee dishonesty bond, if primary blanket bond coverage is less than $1 million.").

[9] FDIC Risk Management Manual of Examination Policies §4.4-1, *available at* https://www.fdic.gov/regulations/safety/manual/section4-4.pdf.

[10] *Id.*

6

Statement nor the Risk Management Manual require the Bond, it was not "executed under [a] law of the United States," as is necessary for jurisdiction under 28 U.S.C. § 1352.[11]

Nevertheless, Travelers urges the Court to adopt a broader reading of "executed under," akin to that embraced by the Ninth Circuit in *Del Hur, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*[12] In *Del Hur*, the Ninth Circuit was confronted with a federal regulation that "required" certain contractors "to provide adequate assurance of performance and payment."[13] "Adequate assurance," in turn, could be provided by doing any one of four things: depositing a cash escrow, obtaining a letter of credit and complying with monitoring procedures, obtaining a letter of credit of a higher amount, or, most relevant here, procuring a performance and payment bond.[14] In this way, the relevant federal regulation could be fulfilled by obtaining a bond, but it did not necessarily require one. The Ninth Circuit held that a bond procured to satisfy the federal regulation was "executed under [a] law of the United States" all the same. In effect, it equated "executed under [a] law of the United States" with "in satisfaction of" a federal regulation.

In this case, however, there is no predicate federal regulation with the force of law imposing a requirement that may be satisfied by obtaining a bond. As such, even under *Del*

---

[11] *See Chambers Bank v. St. Paul Mercury Ins. Co.*, 2011 WL 5529935 (E.D. Ark. Nov. 14, 2011).

[12] 94 F.3d 548 (9th Cir. 1996).

[13] *Del Hur*, 94 F.3d at 550 (citing 24 C.F.R. § 905.170).

[14] *See* 24 C.F.R. § 905.170.

*Hur*'s broader interpretation of "executed under," the Court would still lack subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1352.

*The Court Does Not Have Jurisdiction Under 28 U.S.C. § 1332(a)(1).*

The Court next addresses whether it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), which confers jurisdiction upon the district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."[15]

Plaintiff and Defendant Chapman are both citizens of Oklahoma for jurisdictional purposes. Typically, this would preclude an exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). But Travelers argues that the Court has diversity jurisdiction nonetheless. In its view, Chapman was fraudulently misjoined, and if that is true, then the Court should disregard her citizenship for purposes of determining whether complete diversity exists. The Court disagrees and finds that even if it adopted the fraudulent misjoinder doctrine, Chapman was not fraudulently misjoined.

Fraudulent misjoinder "occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action."[16] The Tenth Circuit has not adopted this doctrine,[17] and lower courts have taken a range of approaches to its

---

[15] 28 U.S.C. § 1332(a)(1).

[16] *LaFalier v. State Farm Fire & Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010).

[17] *Id.* ("There may be many good reasons to adopt procedural misjoinder, as the Insurers argue. But we need not decide that issue today, because the record before us does not show that adopting the doctrine would change the result in this case.").

8

application—including not applying it all.[18] The Court need not decide whether to adopt the doctrine, however, because under the standards of both Fed. R. Civ. P. 20 and Okla. Stat. tit. 12, § 2020(A)(2),[19] the Bank has a reasonable procedural basis to join Chapman and Travelers in this single action.

Parties may be joined as defendants if the claims against them arise out of the same transaction or occurrence and share a common question of law or fact.[20] Here, the Bank alleges that Chapman stole from it and its customers and that Travelers is contractually liable for that theft (at least to an extent). As such, Travelers's contractual liability depends, in both fact and amount, on Chapman's alleged fraud and breach of fiduciary duty. Clearly, then, these claims arise from the same occurrence and share at least common questions of

---

[18] *See, e.g.*, *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1209–10 (D. Nev. 2018) (rejecting doctrine entirely); *Sampson v. Miss. Valley Silica Co.*, 268 F. Supp. 3d 918, 921–22 (S.D. Miss. 2017) (looking only to state joinder standard to determine whether parties were fraudulently misjoined); *Halliburton v. Johnson & Johnson*, 983 F. Supp. 2d 1355, 1359 (W.D. Okla. 2013) (declining to adopt or extend doctrine), *aff'd sub nom. Parson v. Johnson & Johnson*, 749 F.3d 879 (10th Cir. 2014); *Magnuson v. Jackson*, No. 4:11-cv-00561-CVE-PJC, 2012 WL 2995669, at *4 (N.D. Okla. July 23, 2012) (applying doctrine and finding parties not to be fraudulently misjoined); *Bunnell v. Oklahoma MH Props., LP*, No. 5:12-cv-00372-R, 2012 WL 12863916, at *1 (W.D. Okla. May 11, 2012) (applying doctrine and finding parties to be fraudulently misjoined and looking to both Fed. R. Civ. P. 20 and state joinder standard to determine whether parties were fraudulently misjoined); *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 380–81 (D. Md. 2011) (looking only to FRCP 20 standard to determine whether parties were fraudulently misjoined and rejecting "egregiousness" requirement); *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (abrogated on other grounds by, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 46 Fed. R. Serv. 3d 73 (11th Cir. 2000)) (requiring misjoinder to be "egregious" to meet fraudulent misjoinder standard).

[19] The Court concludes the outcome would be the same under either the Federal Rules of Civil Procedure or the Oklahoma Pleading Code. It is therefore unnecessary to determine which set of rules applies.

[20] *See* Fed. R. Civ. P. 20(a)(2); Okla. Stat. tit. 12, § 2020(A)(2).

fact. Accordingly, even if the Court adopted the fraudulent misjoinder doctrine, it would not permit jurisdiction on these facts.

*The Court Declines to Award Costs and Fees Associated with this Removal and Remand.*

Finally, the Court turns to determine whether to award the Bank its costs and fees associated with the removal and remand of this action.

When a case is remanded to state court, the Court may, in its discretion, require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.[21] This determination requires a consideration of the "reasonableness of the removal"; this means that if an "objectively reasonable basis exists" for removal, "fees should be denied."[22]

In some respects, this case presents a close call. As the Bank points out, Counsel for Travelers has made these arguments before to several district courts and has lost each time.[23] Even so, the Court finds that the shifting of costs and expenses is not warranted here because there is an objectively reasonable basis to seek removal, given the relatively underdeveloped state of the law with respect to subject matter jurisdiction under 28 U.S.C. § 1352 and the unsettled state of the law in this circuit with respect to fraudulent misjoinder.

---

[21] *See* 28 U.S.C. § 1447 (2011).

[22] *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

[23] *See, e.g.*, *Monticello Banking Co. v. Everest Nat'l Ins. Co.*, 2013 WL 5411102 (E.D. Ky. Sept. 26, 2013); *Fifth Third Bank v. Progressive Cas. Ins. Co.*, 2011 WL 5037178 (W.D.N.C. May 12, 2011).

*Conclusion*

For the forgoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's "Motion to Remand and Brief in Support" (Dkt. 15). Plaintiff's request to remand this case to state court is **GRANTED**, and Plaintiff's request for costs and expenses is **DENIED**. This action is remanded to the District Court for Muskogee County.

**IT IS SO ORDERED** this 6th day of April 2021.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE